PANTLIND HOTEL COMPANY v GRAND RAPIDS

1. APPEAL AND ERROR—RIGHT TO APPEAL—AGGRIEVED PARTY.

   A Board of Education that was subjected to a lawsuit for a tax refund and alleges that it stands to lose $100,000 because of the judgment is an "aggrieved party" within the meaning of the court rule and may appeal, despite the fact that it was dismissed, over its objection, at the time the final judgment was entered (GCR 1963, 806.1).

2. TAXATION—REFUND—BASIS OF JUDGMENT—STATE TAX COMMISSION.

   A circuit court judgment ordering a partial refund of taxes may be based upon an agreement between the parties as to the assessment of property and the amount of tax to be refunded, where the agreement has been approved by the State Tax Commission; such approval was the exercise of the State Tax Commission's authority required by statute and by an order of the Supreme Court remanding the case for a redetermination of tax assessments.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 March 7, 1972, at Grand Rapids. (Docket Nos. 11720–11726.) Decided July 31, 1972. Leave to appeal denied, 388 Mich 803.

Complaint by Pantlind Hotel Company against the City of Grand Rapids, the Board of Education of Grand Rapids, and Kent County, for partial refund of property taxes levied against plaintiff's property. Judgment for plaintiff. Defendant Board of Education of Grand Rapids appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error §§ 182, 183.
   Right of winning party to appeal from judgment granting him full relief sought, 69 ALR2d 701.
[2] 51 Am Jur, Taxation § 656.

*Honigman, Miller, Schwartz & Cohn* (by *John Sklar),* for plaintiff.

*McDonald, Anderson & Swets,* for Grand Rapids Board of Education.

Before: T. M. BURNS, P. J., and FITZGERALD and DANHOF, JJ.

T. M. BURNS, P. J. This appeal involves seven separate, but subsequently consolidated suits which were commenced by the plaintiff Pantlind Hotel Company to recover a partial refund of certain property taxes which were levied against the plaintiff's property for the years 1964 through 1970 and which were paid under protest by the plaintiff. In each of its successive complaints, the plaintiff alleged that the real and personal property assessments against its property and the taxes based upon such assessments were invalid because the respective assessments were in excess of the "true cash value" of said property and, therefore, the taxes based upon such assessments were excessive, discriminatory and not in accordance with the prevailing level of tax assessments in the City of Grand Rapids. The plaintiff further alleged that the tax assessments were not in accordance with either the applicable Michigan statutes or the Constitution of the State of Michigan.

In addition to commencing these suits in the circuit court, the plaintiff, beginning with the 1964 real estate assessment and the 1965 personal property assessment, began appealing annually to the Board of Review and then to the Michigan State Tax Commission. The plaintiff's appeals to the tax commission concerning the 1964 real property assessment and the 1965 personal property assessment eventually reached the Michigan Supreme

Court; and, on rehearing, the Court ruled that the Michigan State Tax Commission's findings: (1) were *not* supported by the competent material and substantial evidence and (2) *were* contrary to the overwhelming weight of the evidence. Then the Court reversed and remanded the case for a rehearing before the tax commission. See *Pantlind Hotel Co v Tax Commission,* 381 Mich 717 (1969); and *Pantlind Hotel Co v Tax Commission,* 380 Mich 390, 403–405 (1968). Pending the appeals to the Michigan State Tax Commission and the Michigan Supreme Court, the plaintiff's circuit court suits were held in abeyance by agreement between counsel.

Following the Michigan Supreme Court's decision in *Pantlind Hotel Co v Tax Commission,* 381 Mich 717 (1969), the tax commission rescheduled all of the tax assessments for rehearing and redetermination. Thereupon, the City of Grand Rapids employed the Real Estate Research Corporation of Chicago, an independent appraisal firm of national stature and repute, to assist the city in arriving at the true cash value of the plaintiff's property. Similarly, the plaintiff employed two outstanding appraisal firms—Horwath and Horwath, and Kerr, Forster & Company—to appraise the true cash value of the subject property. The written appraisals thus obtained by defendant City of Grand Rapids, as well as those obtained by plaintiff, substantiated plaintiff's contention as to the true cash value of the subject property. Negotiations thereupon ensued between the city attorney, the city assessor and plaintiff's counsel, which resulted in agreement by plaintiff to accept reduced assessments which were still substantially in excess of the appraisals on both sides.

Subsequently, the proposed "revised assess-

ments" were submitted to the Grand Rapids City Commission which, at a regular public hearing held on August 25, 1970, unanimously approved the revised assessments and authorized the city attorney to consummate the settlement. Thereafter, the city commission-approved reassessments were submitted to the Michigan State Tax Commission, which scheduled a hearing for November 17, 1970. At the hearing, evidence was introduced to support the reassessments and appraisals upon which the reassessments were based. Then the tax commission and the assistant attorney general suggested that further proceedings before the tax commission were unnecessary since in light of the agreed-upon revised assessments, plaintiff could obtain its refund by the entry of a judgment in its circuit court actions, which were still pending in the circuit court for the County of Kent.

However, although defendant City of Grand Rapids and defendant Kent County agreed to the stipulated revised assessments, the defendant Board of Education of Grand Rapids refused to join in said stipulation. Thereupon the plaintiff filed a motion to consolidate the various pending actions and a motion for summary judgment. On February 19, 1971, the motions were heard before the trial judge, and he took both motions under advisement. On April 8, 1971, the causes came on for trial, and the judge entered an order consolidating plaintiff's actions. Then plaintiff's attorney stated:

"In checking the statute in preparation for trial, it appears clear to us that our only legal remedy is against the City of Grand Rapids, because all of the taxes were paid to them. And they were the collecting agent for both themselves, the Board of Education of Grand Rapids and the County of Kent and * * * that

the proper remedy is a judgment against the City of Grand Rapids and that the City of Grand Rapids has then the opportunity of adjusting their accounting that they make when they transmit funds between themselves and the Board of Education of Grand Rapids and the County of Kent in making any adjustments that they feel they are entitled to by reason of any refund that they paid as a matter of correct legal procedure. In view of that, I consent to the dismissal of the actions against the Board of Education of Grand Rapids and the County of Kent and that a judgment should be entered against solely the City of Grand Rapids in the amount which we have agreed upon and pursuant to the stipulation that was previously filed between us."

A few moments later, counsel for defendant City of Grand Rapids said:

"In this matter, your Honor, we are asking the Court to accept the stipulation that we have signed with Mr. Honigman [plaintiff's counsel] for the Pantlind Hotel.

\* \* \*

"Originally, the [Michigan Supreme] Court held [upheld?] the assessment [against plaintiff's property] then later reversed itself and sent it back to the State Tax Commission for rehearing.

"In the basis of that Supreme Court decision to send it back, there was really nothing on the record to substantiate the assessment that had been made by the State Tax Commission, the appraiser that had made its determination, of the proceedings up to that point. It was then that the City of Grand Rapids obtained an appraiser we feel is competent in this area. I think this area of assessment requires a special, competent appraiser. We had that appraisal done by Real Estate Research Corporation of Chicago and that appraisal was done for the city. Mr. Honigman had appraisal by Orwant and Orwant [Horwath and Horwath] and Harris Kerr [Kerr, Forster & Company] who are both competent in the area of hotel appraisals. The stipulation that we have agreed to places values on that property higher than any one of those three appraisals.

\*   \*   \*

"Our position in this case is not that we have carelessly or thoughtlessly arrived at these values, in the stipulation that we signed. We think not only is this a fair assessment but it is our duty to assess them at those values, we think it is fair market value, the settlement, based on 50% of fair market value. We are asking the court to accept that stipulation because we think it is a fair assessment. We have received the authority of City Assessor to enter in that stipulation. He is here in the courtroom. And we have received authority from the Grand Rapids City Commission in the form of a resolution to enter into that stipulation.

"Now, so far as the proposed judgment, we will not object to a judgment entered against the city for the total amount of taxes which have been calculated from the new assessment on the Pantlind Hotel property."

Then the attorney for defendant County of Kent said:

"I would like to at this time join plaintiffs in a motion to dismiss all these cases as against the County of Kent for the reason that we are not a proper party in this case, it properly should have been brought only against the City of Grand Rapids."

Then the attorney for the defendant Board of Education of Grand Rapids stated:

"We want to be dismissed from these lawsuits. We feel that the court has no jurisdiction here to enter a judgment against either the city or the board or anybody else because the State Tax Commission has not finally set the assessment on the basis of a summary judgment, without evidence showing that the tax is illegal as defined by the court. The court doesn't have jurisdiction to accept a stipulation of the parties because the only one who can set the assessment is the City Assessor or the Board of Review on appeal or the State Tax Commission on appeal to it.

\*   \*   \*

"Now it seems to me, based upon the pleadings in this case, the allegations of fraud, the allegations of illegality, the allegations of discriminatory assessment that this court's jurisdiction is limited to determining whether the assessment was illegal and there hasn't been any testimony before the Court on that and absent that, the court has no jurisdiction to enter a judgment against anybody. In view of the fact that the State Tax Commission has dismissed this case, has not set the assessment, there has [not?] been an exhaustion of administrative remedies and also there has been an abandonment of administrative remedies.

\* \* \*

"Well, if you [the trial court] dismiss the cases on the grounds that we have asked then we agree with that, but we object to the entry of a judgment against the City of Grand Rapids for the tax monies that we have and they haven't asked for that."

A few moments later, the trial judge made the following ruling:

"All right, I am going to grant the plaintiff's motion to dismiss all of these cases, and you have the numbers of them, against the County of Kent and against the Board of Education of the City of Grand Rapids. I am not granting the motion on the ground that you submit, Mr. Anderson [attorney for defendant Board of Education], because if I did that, I would be solving or attempting to solve any future matters relating to these cases between the Board of Education of the City of Grand Rapids and the City of Grand Rapids which I don't want to do now."

Then the trial judge ruled that a consent judgment should be entered against the City of Grand Rapids, but without prejudice to the rights of any of the defendants as between themselves.

On April 19, 1971, the defendant Board of Education of Grand Rapids filed a claim of appeal from the trial court's judgment. On May 5, 1971,

the plaintiff filed a motion to dismiss the appeal requesting punitive costs on the ground that defendant Board of Education had no legal right to appeal from the trial court's judgment. On July 9, 1971, the Michigan Court of Appeals ruled that the motion to dismiss would be held in abeyance until such time as the appeal is submitted for decision on the merits. The Board of Education's appeal is now before the Court.

The first question to be decided is whether or not the Board of Education is an aggrieved party within the meaning of GCR 1963, 806.1 which provides in pertinent part:

".1 Appeal as of right. In all criminal and civil matters, an aggrieved party shall have a right to appeal from all final judgments or final orders from the Circuit Courts."

In the instant case the action against the defendant Board of Education had already been dismissed at the time the final judgment had been entered. However, the action was dismissed over the board's objection and since the Board of Education alleges they do stand to lose $100,000 because of the judgment, it is our opinion that they are an "aggrieved party" within the meaning of the court rule. The Board of Education was made a party to the action and we see no reason, in this case, to prevent them from appealing. The board is, in our opinion, an "aggrieved party" within the meaning of GCR 1963, 806.1 and is, therefore, entitled to appeal.

The Board of Education contends that the city commission does not have the authority to enter into a stipulation with the taxpayer as to the assessment of the property and the amount of the refund to the taxpayer. It is the board's position

that only the State Tax Commission can make such a redetermination and, therefore, the agreement between the plaintiff and the city commission is void.

After this cause was originally remanded by the Supreme Court to the State Tax Commission, as we pointed out above, the property was reappraised by both the City of Grand Rapids and the plaintiff. The city commission then unanimously approved the "revised assessments" based upon the new appraisals and said assessments were submitted to the State Tax Commission which held a hearing thereon. Then the tax commission and the assistant attorney general decided that further proceedings before the tax commission were unnecessary since in light of the agreed-upon revised assessments, plaintiff hotel could obtain its refund by the entry of a judgment in its circuit court actions which were still pending in the circuit court for the County of Kent. Then once the judgment was entered based upon the stipulation of the parties, the tax commission registered its approval of the action of the circuit court by dismissing the complaints. We therefore find that the State Tax Commission did exercise its authority and that the cause was properly disposed of both as to the assessments and the amount of money refunded. Although the result is based upon an agreement by the parties, the judgment by the lower court and the subsequent approval thereof by the State Tax Commission was in compliance with both the order of the Michigan Supreme Court and the proper statutory procedures.

Affirmed.

All concurred.